ON OBJECTION TO THE MAGISTRATE'S DECISION IN MANDAMUS DECISION
Relator, Victor Chelsea, filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's application for permanent total disability and to issue an order granting said compensation or, in the alternative, to issue an order that complies with State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167.
This court referred the matter to a magistrate pursuant to Civ.R. 53(C), and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (See Appendix A.) The magistrate concluded that relator failed to meet his burden in mandamus and that this court should deny the requested writ.
Relator filed an objection to the decision of the magistrate. Essentially, relator argues that the magistrate should not have denied the writ because there was insufficient evidence to support the commission's denial of his application for permanent total disability compensation. Relator asserts that the evidence establishes that he lacks the intellectual capacity to learn the additional skills he would need to obtain the type of work he is capable of performing. The commission filed a memorandum in opposition to relator's objection, arguing that there was sufficient evidence presented to support the commission's decision.
The magistrate notes that the commission identified reports from Drs. Yarab and Van Auken, which indicate that relator is physically and psychologically capable of sustained remunerative employment consistent with a number of job titles. The commission also identified the report of vocational expert Larry Kontosh, as well as a number of other factors which demonstrate that relator is capable of acquiring new job skills. Because the commission cited "some evidence" to support its decision and provided an explanation of its reasoning, the magistrate concluded that the court should deny the requested writ.
The magistrate's decision identifies the correct standard of review. The issue before the court is whether the commission cited "some evidence" to support its decision and provided a brief explanation of its reasoning. Although there is conflicting evidence relating to relator's capacity to learn, the commission clearly cited "some evidence" to support its decision and provided an explanation of its reasoning.
Following an independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law. Accordingly, relator's objection to the magistrate's decision is overruled and we adopt the decision of the magistrate as our own. Therefore, the requested writ of mandamus is denied.
Objection overruled;
Writ of mandamus denied.
BOWMAN and BROWN, JJ., concur.
 APPENDIX MAGISTRATE'S DECISION IN MANDAMUS
Relator, Victor Chelsea, filed this original action asking the court to compel respondent Industrial Commission of Ohio to vacate its order denying compensation for permanent total disability ("PTD") and to issue an order that grants compensation, or, in the alternative, an order that complies with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
Findings of Fact:
1. In June 1986, Victor Chelsea ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for aggravation of preexisting lumbosacral strain and major depression.
2. In 1993, the commission denied claimant's PTD application, noting that, according to two doctors, the deterioration of claimant's psychological status was caused by events unrelated to the industrial injury, particularly the death of his wife.
` 3. In August 1999, claimant filed a second application, indicating that he was seventy-one years old and completed eleven years of formal education before joining the armed forces. Claimant obtained his GED certificate and graduated from a two-year program in chef training, after which he worked in the merchant marines as a cook. Claimant then worked for a cookie manufacturer and later purchased a distributing route. At one point, he owned a restaurant. In addition, claimant was employed by the respondent employer for many years as a weigh-master/stamper and utility man, which required heavy strength.
4. In November 2000, claimant was examined by Ronald Yarab, M.D., who observed that the ranges of motion exhibited by claimant showed a non-uniform pattern. Dr. Yarab found no clinical signs of radiculopathy and assessed a 5% whole-person impairment. He found that, although claimant could not return to the heavy work performed previously as a weigh-master/stamper and utility man, claimant could perform work that did not require heavy lifting. He provided a capacities checklist, which is described at length in the order quoted below.
5. In November 2000, claimant was examined regarding the allowed psychological condition by Steven Van Auken, Ph.D., who opined that claimant had sustained a 15% whole-person impairment, based on symptoms such as diminution of energy and concentration. Dr. Van Auken concluded that the impairment was not severe enough to preclude claimant from engaging in sustained remunerative employment. His report is described at length in the subject order, quoted below.
6. An employability assessment was provided by Larry Kontosh, Ph.D., who opined that claimant's GED and his graduation from the two-year chef program were advantages. He opined that claimant's self-employment indicated an above-average cognitive ability. Dr. Kontosh recognized that claimant's age was a disadvantage but concluded that claimant could work as a general clerk, order clerk, check-out clerk, hand-packer, etc., if the opinions of Drs. Yarab and Van Auken were adopted
7. Vocational assessments were also provided by Erica Brown, Barbara Burk, and John Ruth.
8. In February 2001, the PTD application was heard, resulting in a denial of compensation.
9. In March 2001, claimant filed a motion for reconsideration, arguing that the commission made a mistake of fact regarding rehabilitation. In August 2001, the commission granted the motion for reconsideration. The commission then proceeded to reconsider the PTD application on its merits:
 * * * The Commission relies upon the reports of Dr. Ronald Yarab and Dr. Steven Van Auken. These reports support the conclusion that the allowed physical and psychological conditions do not prevent the injured worker from engaging in at least certain types of sustained remunerative employment.
* * *
 Dr. Yarab * * * found no impairment of deep tendon reflexes or sensation. The injured worker's lumbar range of motion was completed to 20 degrees forward flexion, there was no lumbar extension completed, and there was 10 degrees lateral range of motion bilaterally. A seated leg raise test was completed to 90 degrees. A traditional straight leg test was negative. There was no tenderness of the back upon palpa-tion. Clinical examination maneuvers failed to demonstrate any positive signs of radiculopathy, according to Dr. Yarab's physical examination of the injured worker. Dr. Yarab found the injured worker's range of motion testing revealed a non-uniform loss of range of motion, the injured worker exhibited intermittent or continuous muscle guarding with no objective sign of radiculopathy and no loss of structural integrity. Per Dr. Yarab's clinical examination, the injured worker demon-strated a minor impairment of 5% to the whole person.
 According to Dr. Yarab, the injured workers' physical restrictions due to the allowed aggravation of pre-existing lumbosacral sprain/strain are: standing 3-5 hours per day; walking 3-5 hours per day; lifting/carrying up to 10 lbs. for 3-5 hours per day; lifting/carrying between 10-20 lbs. for 0-3 hours per day; lifting 20-50 lbs. for 0-3 hours per day; occasional stair climbing; no ladder climbing; occasional crouching, stooping, bending, kneeling; occasional overhead reaching; and occasional reaching at floor level. The injured worker can perform light work without difficulty, he has no restrictions in handling items with his upper extremities, such as seizing, holding, grasping, or turning; he can use both feet to operate foot controls on a frequent basis; he can reach at waist and knee levels on a frequent basis; and he can sit for 5-8 hours per day.
 Dr. Van Auken * * * found the allowed major depression condition results in a mild impairment of 15% to the body as a whole. Dr. Van Auken's finding was based upon his 11/09/2000 psychological testing of the injured worker, the injured worker's complaints at the time of the examination, the injured worker's history, and upon his clinical examination of the injured worker. The injured worker's examination revealed no evidence of hallucinations, delusions, obsession or compulsion, loosening of associations or paranoia. The injured worker demonstrated a generally reliable memory for recent and remote events, and demonstrated adequate concentration. The injured worker revealed that he is able to drive himself to the store, fix his meals, attend to his own personal hygiene, manage his own finances, and attend church occasionally. The injured worker is socially active as he enjoys socializing with a girlfriend, attends monthly meetings for the different retiree groups of which he is a member, and corresponds daily by telephone with his sister and his daughter. Dr. Van Auken opines the injured worker has adequate concentration for the tasks and activities, which he chooses to undertake. According to Dr. Van Auken, the injured worker avoids long-term projects which would pose serious challenges to his concentration, but the injured worker is able to recognize his limitations and has been able to find some things to replace the things that he is not able to enjoy. Considering all of these findings, Dr. Van Auken opines that the psychological impairment due to the allowed major depression condition is mild in nature, and is consistent with a 15% impairment to the body as a whole, and that the allowed major depression condition does not preclude the injured worker from performing sustained remunerative employment.
 * * * [V]ocational expert Larry Kontosh * * * supports the conclusion, based on the reports of Dr. Yarab and Dr. Van Auken, that the injured worker retains the residual functional capacities to perform sustained remunerative employment consistent with a number of job titles.
 Some job titles which were identified by the vocational expert as being current employment options for the injured worker include: telephone solicitor, library check-out clerk, department store greeter, hand packer, general clerk, and order clerk. The injured worker is capable of other light duty work per Dr. Yarab. There are no specific psychological limitations or restrictions due to the allowed major depression condition; the impairment due to this condition is found to be mild, according to Dr. Van Auken * * *.
 The Industrial Commission finds the residual functional capacities set forth in the above persuasive medical reports clearly would not physically and psychologically prevent the injured worker from engaging in sustained remunerative employment consistent with the job titles identified by the vocational expert as being current employment options.
 The injured worker testified at hearing that he is currently approximately 72 years of age. Although the Industrial Commission finds that the injured worker's age is viewed as a negative factor, the injured worker's age is not found to be a barrier to reemployment. The injured worker's age in and of itself clearly would not prevent the injured worker from obtaining and performing sustained remunerative employment * * *.
 The * * * injured worker's level of education is viewed as a positive vocational factor. At hearing, the injured worker indicated that he completed approximately the eleventh grade, but subsequently obtained a GED. The injured worker is able to read, to write, and to perform basic math. Although the injured worker states on his IC-2 Application that he can read, but not well, the Industrial Commission finds the injured worker's self assessment is some evidence that he possesses the basic ability to read. * * * The injured worker's educational background, possession of a GED, in combination with his ability to read, write, and to perform basic math, are found to be positive vocational factors affecting the injured worker's ability to acquire and maintain an unskilled entry level light duty position, such as one of the positions identified by the vocational expert as being current employment options. The Commission finds the injured worker's education and abilities would not preclude or prevent him from performing work such as a greeter, telephone solicitor, library clerk, or order clerk.
 The injured worker's prior work history was identified by the vocational expert and is found to vary in skill level. The injured worker's past employment includes the following: weigh master, utility worker, route/delivery driver, restaurant owner, and chef. The vocational expert, Larry Kontosh, notes that the injured worker's prior work history ranges from skilled-light duty work to semi-skilled medium and heavy-duty work.
 The injured worker had two years of specialized training as a chef. The injured worker successfully completed and graduated from a two year chef program in Connecticut; he subsequently worked for several different restaurants as a chef before joining the Merchant Marines. The injured worker worked for Archway Cookie Company as a delivery route driver, and then purchased his own cookie route. However, the injured worker gave up the cookie route due to the competition and in order to return to Warren, Ohio. Subsequently, the injured worker returned to Ohio and married. According to the injured worker's statements to Dr. Van Auken, he sought job stability and benefits for his family by working at Copperweld Steel Company. The injured worker worked at Copperweld from 1959 until the industrial injury in 1986.
 The Industrial Commission finds the injured worker's prior work history is overall viewed as being a positive vocational asset. The Commission bases this finding on the injured worker's capacity to perform skilled work. Despite the fact that skilled work was performed many years ago, the injured worker has demonstrated an ability to perform skilled work and run his own business. This suggests the injured worker has problem solving abilities, cognitive abilities, interpersonal skills and possesses assets and abilities not fully utilized in his last occupation at Copperweld. The injured worker had previously worked for several different employers as a chef, had, at one time, opened and ran his won restaurant briefly in Chicago, and had owned and ran his own cookie route. This implicitly demonstrates the injured worker's capacity to adapt, to learn, to problem solve and to acquire new skills. These features are found to be positive attributes/assets, which would assist the injured worker in obtaining and maintaining an entry level, light duty position, such as one of the positions identified by Larry Kontosh, such as a store greeter or a library check-out clerk.
 Despite the injured worker's advanced age and past occupation as a weigh master and utility worker, the Commission finds the injured worker possesses past work experience and education qualify him to perform the light to sedentary, unskilled positions identified by Larry Kontosh. The injured worker's argument that he lacks transferable skills, and has limited intellectual capacity is not well founded. Despite the injured worker's low average intelligence test scores, the injured worker had worked in skilled positions and had successfully worked for over 30 years.
* * *
 Based on a careful consideration of the above, as well as all of the evidence in file and at hearing, the Industrial Commission concludes that the injured worker is capable of performing sustained remunerative employment. * * *
Conclusions of Law:
The issue before this court in mandamus is whether the commission cited "some evidence" to support its decision and provided a brief explanation of its reasoning. Noll; Stephenson, supra; see, also, State ex rel. Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92; State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373; State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139.
In its order, the commission relied on the opinion of Dr. Yarab, who found mild physical impairment, and on the opinion of Dr. Van Auken, who found that the allowed conditions did not prevent claimant from working. Their opinions support the conclusion that claimant could perform light work within the stated restrictions.
As to the nonmedical factors, the commission was within its discretion to view claimant's GED as a vocational asset. Given that a high school diploma may be viewed as an asset even when academic skills are at the grade-school level, Ellis, supra, the magistrate concludes that a GED may also be viewed as an asset, because it demonstrates to potential employers that claimant has demonstrated academic skills and knowledge at the high school level.
Claimant argues, however, that he presented, "with more than a preponderance of the evidence, that he lacks the intellectual capacity to learn." In mandamus, however, the court does not consider whether the decision is supported by the manifest weight of the evidence. This court cannot disturb a commission order supported by "some evidence" regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision. Pass, supra, at 376.
The magistrate concludes that the commission's finding of claimant's capacity to learn is supported by some evidence in the record, which includes evidence of his GED, his successful vocational training, the variety of responsible jobs held, and Dr. Kontosh's opinion. Although Dr. Van Auken indicated that claimant's mental/emotional faculties were reduced, he opined that the allowed condition would not prevent claimant from working. While the report is subject to interpretation, the commission's evaluation was within its discretion.
Claimant argues, however, that the conclusions stated by Dr. Kontosh and the commission "are in direct contradiction with the only objective testing of Mr. Chelsea's intelligence," which was done by his vocational consultant, Ms. Brown. We find that this argument, while a reasonable argument to present to the trier of fact, was not binding on the trier of fact. First, no vocational expert's evaluation is binding on the commission, which may reject all or part of any vocational assessment. State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266; Ewart, supra. Indeed, the commission may reject the opinion of its own vocational specialists. Ellis, supra. The commission has sole authority to decide which evidence is more persuasive. State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18.
Second, testing of achievement and aptitudes is not like the testing of blood pressure, blood composition, temperature, x-rays of bones, analysis of urine, etc. In tests of achievement and aptitude, a subject may unconsciously or deliberately obtain lower scores where substantial gain is involved. Also, individuals may perform poorly on a "pen and pencil" test but perform better in a "hands on" work setting. In short, there is no authority for the proposition that the testing of claimant's intelligence by his vocational consultant was conclusively binding on the commission. While the commission may rely on vocational testing, a low score on such testing does not provide a conclusive assessment of the matter being tested.
While claimant may not possess his former broad abilities, the record nonetheless supports the commission's determination that claimant can learn to perform a job. See State ex rel. West v. Indus. Comm. (1996),74 Ohio St.3d 354 (ruling that the commission may rely on a claimant's ability to read, write and perform basic math — even if not well — in concluding that claimant is capable of performing an entry-level position). Even where the history of employment is remote or not particularly compelling to the court, the commission has discretion to rely on it. See State ex rel. Mobley v. Indus. Comm. (1997),78 Ohio St.3d 579, 584; State ex rel. King v. Trimble (1996),77 Ohio St.3d 58, 63 (stating that although the evidence was "not particularly compelling to us," the court would not substitute its judgment for the commission's).
In sum, claimant has not met his burden of proof in mandamus. Accordingly, the magistrate recommends that the court deny the requested writ.
 PATRICIA DAVIDSON MAGISTRATE